GARY PRINCE, Plaintiff-Appellant, *v.* GALIS MANUFACTURING COMPANY, Defendant-Appellee.

Third District No. 77-407

Opinion filed April 17, 1978.

Nile J. Williamson, of Lindholm & Williamson, of Peoria, for appellant.

Arthur R. Kingery and Edward R. Durree, both of Strodel & Kingery, Assoc., of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Peoria County which granted a motion for summary judgment filed by the Galis Manufacturing Company in a products liability suit filed by the plaintiff, Gary Prince.

The plaintiff, an underground or deep mine coal miner, was injured while engaged in his employment duties at the Consolidation Coal Company's mine located at Girard, Illinois. At the time of his injury the plaintiff was operating a twin boom, or "roofbolter machine"

manufactured by the defendant. The purpose of the machine was to implant metal roof bolts in the ceiling of an underground mine in order to prevent the collapse of the ceiling. To operate the machine referred to as a "roofbolter" it is necessary that the operator place a drill bit into the chuck of a hydraulic boom. The boom would then force the drill bit in an upward position and a hole would be drilled into the ceiling of the underground mine. A roof bolt is then pushed into the hole and tightened by means of a metal wrench which is inserted into the chuck of the machine.

The plaintiff was operating a Galis type machine manufactured by the defendant on March 20, 1975, when he was injured during the bolt tightening process as the result of a wrench being used to tighten the bolt flying out of the chuck on the machine. The wrench struck the plaintiff in the face and among the injuries received was the loss of his left eye.

It is undisputed that the "roofbolter" used by the plaintiff had no wrench or auger retainer on it at the time of the plaintiff's action; however, another type of machine known as the "Manson" bolter did have a wrench retainer installed on it and the plaintiff was aware of the use and purpose of the device.

From a discovery deposition taken of the plaintiff we find that he had 3½ years of coal mining experience and from December, 1974, until the date of his accident he worked steadily as a roofbolter on a "Galis" machine. He had been warned by fellow employees as to the possible risk of the wrenches used on the machine flying out of the chuck and injuring him. The plaintiff further admitted that he had probably made complaints to other individuals concerning the danger posed by the lack of a wrench retainer on the "Galis" machine.

The plaintiff's amended complaint sounding in strict liability in tort alleged that the roofbolter was unreasonably dangerous for its intended use in that it was defectively designed and manufactured so that no lock was installed or provided on the chuck of the roofbolter to prevent the wrench from spinning out of the chuck while it was in use.

The defendant manufacturer denied that the machine was in any manner unreasonably dangerous and further filed an affirmative defense alleging that the plaintiff assumed the risk of the alleged unreasonably dangerous condition.

As we have previously stated, the trial court based upon facts disclosed by various depositions granted the defendant's motion for summary judgment, said motion having been predicated upon the theory that the plaintiff had assumed the risk of injury from the absence of a wrench or auger retainer on the defendant's roofbolter.

The plaintiff raises two issues in this appeal, first, did the trial court err in allowing the defendant's motion for summary judgment, and,

secondly, was the plaintiff guilty of assuming the risk of an inherently dangerous product by proceeding to use the same when he knows that it is dangerous?

■■ Addressing our attention to the first issue, we are well aware of the rule of law that summary judgments should be allowed only if there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of law. (*Greenwood v. Leu* (1973), 14 Ill. App. 3d 11, 302 N.E.2d 359.) Further when ruling on a motion for summary judgment, the court must construe the pleadings, exhibits, and affidavits included therein strictly against the moving party and liberally in favor of the opponent. *Decatur Construction, Inc. v. Central Illinois Public Service Co.* (1974), 16 Ill. App. 3d 1056, 307 N.E.2d 431.

■■ Though motions for summary judgment must be viewed most carefully and strictly construed against the movant, the reviewing courts of this State have affirmed or ordered the granting of a summary judgment when it has been determined that plaintiffs have assumed the risk of their injuries as a matter of law. *Kirby v. General Motors Corp.* (1973), 10 Ill. App. 3d 92, 293 N.E.2d 345; *Ralston v. Illinois Power Co.* (1973), 13 Ill. App. 3d 95, 299 N.E.2d 497; *Denton v. Bachtold Brothers Inc.* (1972), 8 Ill. App. 3d 1038, 291 N.E.2d 229; *Fore v. Vermeer Manufacturing Co.* (1972), 7 Ill. App. 3d 346, 287 N.E.2d 526.

In examining a previous opinion issued by this court in a products liability case where summary judgment was granted to the defendant on the grounds that the plaintiff had assumed the risk of his injuries, we direct our attention to *Fore v. Vermeer Manufacturing Co.* (1972), 7 Ill. App. 3d 346, 287 N.E.2d 526. In *Vermeer* this court stated:

"It appears to be clear that the plaintiff had actual knowledge of the danger; that he understood and appreciated the risk, and that he deliberately exposed himself to such risk, all while he was of full age, well experienced, with complete knowledge and understanding, of an obvious defect, and an obvious danger. Under such circumstances the court may declare as a matter of law that he assumed the risk. (57 Am. Jur. 2d, Negligence, Sec. 287.) Assumption of the risk is a matter of law where the facts are undisputed and present a situation so plain that different conclusions may not be drawn. 65A C.J.S., Negligence, Sec. 251(2)." *Fore v. Vermeer Manufacturing Co.* (1972), 7 Ill. App. 3d 346, 349, 287 N.E.2d 526, 527.

Applying the criteria set forth in the case of *Vermeer* to the facts in the instant case we find that we are confronted with a plaintiff who was an experienced coal miner, who bid on and obtained the job as a roofbolter in December 1974. He was familiar with both the "Manson" and "Galis" type of machines and was aware of the fact that the latter type did not

have wrench retainers. He (the plaintiff) knew and understood the risk of injury from wrenches flying out of the "Galis" machine which he was using at the time he was injured. He acknowledged that he had been warned as to the potential danger involved in using the machine and that he had probably complained to his superiors concerning the hazards involved. His prior knowledge and understanding of the dangerous condition that existed is unequivocally established by this portion of his deposition:

"Q. Did you consider the operation of the Galis without the wrench retainer to present hazards to you?

A. Yes.

Q. And you were aware of that hazard of the wrench flying out because there was no wrench retainer on it prior to your accident?

A. I guess."

■■  Under such a set of facts we can only conclude that like the plaintiff in *Vermeer* (*Fore v. Vermeer Manufacturing Co.* (1972), 7 Ill. App. 3d 346, 287 N.E.2d 526) the plaintiff in the instant case assumed the risk of his injuries as a matter of law and that the trial court correctly granted the motion of the defendant for summary judgment.

Addressing our attention to the second issue raised by the plaintiff, to-wit, is the plaintiff guilty of assuming the risk of an inherently dangerous product by proceeding to use that product when he knows it is inherently dangerous, we must answer this question in the affirmative. The plaintiff in our opinion has a misconception of the law of strict liability in tort. The plaintiff in his brief argues that there can be no duty imposed upon a plaintiff to refuse to operate machines because he knows that a machine could be designed in a safer fashion. He argues that to accept this premise would be to circumvent the basic premise of our supreme court in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, wherein the court held that all manufacturers had a duty to manufacture a product which is not unreasonably dangerous. We quarrel not with the holding in *Suvada*, however, our supreme court subsequently recognized the defense of assumption of risk in strict liability cases. (See *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.) In *Brown Manufacturing Co.* the court stated:

"We emphasize that 'assumption of risk' is an affirmative defense which does bar recovery, and which may be asserted in a strict liability action notwithstanding the absence of any contractural relationship between the parties." *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 430, 261 N.E.2d 305, 312.

In *Suvada* our supreme court was not confronted with a situation where a plaintiff had prior knowledge of a dangerous condition being present in the use of a product. In *Brown Manufacturing Co.* the court was

confronted with this situation and accordingly assumption of risk as an affirmative defense was recognized and established. As we have previously stated it is a defense which when present has been approved of by the reviewing courts of our State.

■■ We further make the observation that contrary to plaintiff's assertions, the law of strict product liability is not the equivalent of absolute liability. A manufacturer is not an absolute insurer of its product as to all injuries resulting from contact with or use of the product. *Winnet v. Winnet* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.

For the reasons set forth the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

ALLOY, P. J., and STOUDER, J., concur.